Benjamin T. Andersen, *Of Counsel*
Pacific Northwest Law, LLP
1420 World Trade Center
121 S.W. Salmon Street
Portland, Oregon 97204
t. 503.222.2510 f. 503.546.0664
btandersen@pacificnwlaw.com

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                       Plaintiff,<br><br>v.<br><br>Edwin MAGAÑA-SOLIS,<br><br>                     Defendant. | Case No. 3: CR 11-467-MO-8<br><br>DEFENDANT MAGAÑA-SOLIS' MOTION TO SUPPRESS AND EXCISE EVIDENCE DERIVED FROM "GEOLOCATION" AND PEN REGISTER ORDERS AND JOINDER IN SIMILAR SUCH MOTIONS |

COMES NOW Defendant, by and through his attorney, and moves this court for an order suppressing any and all information, including any and all derivative information, obtained from or under the authority of the "geolocation" and "pen register/trap and trace" orders sought by and issued to the prosecution in this case, on the grounds that those orders violated the Fourth Amendment to the US Constitution.

THROUGH this motion, Defendant also moves to JOIN in similar motions filed by co-defendants in this case.

The orders referred to above were obtained under the following District of Oregon case numbers, so far as is now known:

PAGE 1 – DEFENDANT MAGAÑA-SOLIS' MOTION TO SUPPRESS AND EXCISE EVIDENCE DERIVED FROM "GEOLOCATION" AND PEN REGISTER ORDERS AND JOINDER IN SIMILAR SUCH MOTIONS
        United States v. MAGAÑA-SOLIS,
        USDC Oregon Case No. 3:CR 11-467-MO-8

"Geolocation" orders:

> 10-MC-9096-B
> 11-MC-9112
> 11-MC-9080
> 11-MC-9130
> 11-MC-9131
> 11-MC-9131
> 11-MC-9102
> 11-MC-9191

Pen Register/Trap and Trace and Cell Site Location Orders:

> 10-MC-9096-A
> 10-MC-9108
> 10-MC-9149
> 11-MC-9031
> 11-MC-9071
> 11-MC-9112
> 11-MC-9127
> 11-MC-9152
> 11-MC-9227
> 11-MC-9228
> 11-MC-9247
> 11-MC-9265
> 11-MC-9264

Defendant also moves for an order excising any such geolocation information and the information derived from ("fruits" of) the use of that geolocation information from the applications for wiretap orders on Target Telephones A, B, and C (in Oregon District Court case no. 11-MC-9248), from the numerous search warrants sought and granted in this investigation (in Oregon District Court case no. 11-MC-9282), from the tracking warrant sought and granted in this investigation (in Oregon District Court case no. 11-MC-9620), and from any other applications for warrants sought and granted in this investigation.

This motion is supported by the attached Memorandum in Support.  This motion also is supported and incorporates the arguments put forth by co-defendants in this case in

PAGE 2 – DEFENDANT MAGAÑA-SOLIS' MOTION TO SUPPRESS AND EXCISE EVIDENCE DERIVED FROM "GEOLOCATION" AND PEN REGISTER ORDERS AND JOINDER IN SIMILAR SUCH MOTIONS
     United States v. MAGAÑA-SOLIS,
     USDC Oregon Case No. 3:CR 11-467-MO-8

similar motions, specifically, but not necessarily limited to, those filed by co-defendants Gutierrez-Montes and Garcia-Zambrano.

Referenced in the Memorandum in Support are Exhibits A-1 through A-4 and Exhibit B-1.  These will be filed with the court as soon as their status as being sealed or unsealed can be determined.

SO MOVED this 25th day of June, 2012.

/s/ (intended as original in electronic filings)
_____
Benjamin T. Andersen, OSB 06256
Attorney for Defendant

**TABLE OF CONTENTS**

I.    OVERVIEW OF INVESTIGATION.................................................................. 1
      A.    "Geolocation" Orders.................................................................. 1
      B.    Pen Register/Trap and Trace Orders............................................ 2
      C.    Wiretap Orders.......................................................................... 2

II.   OVERVIEW OF ARGUMENT .................................................................... 2

III.  THE GEOLOCATION ORDERS WERE NOT PROPERLY AUTHORIZED...................... 3
      1.    Federal Rule of Criminal Procedure 57(b) Does not Authorize the Type of
            Geolocation Orders in Question .......................................................... 4
      2.    Federal Rule of Criminal Procedure 41 Does not Authorize the Type of Geolocation
            Orders in Question .......................................................................... 5
      3.    28 USC § 1651(a) Does not Authorize the Type of Geolocation Orders in Question
            .......................................................................................................... 6
      4.    18 USC 2703(d) Does not Authorize the Type of Geolocation Orders in Question
            ........................................................................................................ 11

IV.   THE AFFIDAVITS FAILED TO ESTABLISH PROBABLE CAUSE............................. 12

V.    THE PEN-REGISTER/TRAP AND TRACE APPLICATIONS AND ORDERS IMPROPERLY
      SEEK CELL SITE LOCATION INFORMATION ........................................... 14

VI.   EXCISION AND SUPPRESSION IS THE APPROPRIATE REMEDY ........................... 14

**CASES**

*A. L. A. Schechter Poultry Corp. v. United States*, 295 US 495 (1935) ......................... 3

*American Banana Co. v. United Fruit Co.*, 213 US 347 (1909) .................................... 9

*Illinois v. Gates*, 462 US 213, 232, 103 S.Ct. 2317 (1983) .................................... 12

*In re Application of the United States of America for an Order Authorizing the Installation
and Use of a Pen Register*, 402 F.Supp. 2d 597 (Md. 2005)...........................12, 14

*In re Application of United States for an Order Authorizing Disclosure of Location
Information of a Specified Wireless Telephone*, No. 10-2188-SKG, 2011 U.S. Dist.
LEXIS 85638, 2011 WL 3424470 (Md. 2011)................................................... 7

*Katz v. United States*, 389 US 347 (1967)........................................................... 3

*Levine v. United States*, 182 F.2d 556 (8th Cir. 1950) ............................................. 5

*Penn. Bur. of Corr. v. US Marshals Srvc. et. al.*, 474 US 34 (1985).............................. 8

*Syngenta Crop Prot., Inc. v. Henson*, 537 US 28 (2002)............................................. 8

*United States v. Anderson*, 433 F.2d 856 (8th Cir. 1970) ......................................... 5

*United States v. Chadwick*, 433 US 1 (1977) ...................................................... 11

*United States v. George*, 883 F.2d 1407 (9th Cir. 1989)........................................... 4

*United States v. Jones*, 132 S.Ct. 945, 506 US ___, (2012)................................... 2, 3

*United States v. Karo*, 468 US 705 (1984) ......................................................... 3

*United States v. Lewis*, 36 F. 449 (Or. 1888)..................................................... 9

*United States v. Luton*, 486 F.2d 1021 (5th Cir. 1973) ........................................... 9

*United States v. Marks*, 530 F.3d 799 (9th Cir. 2008) ............................................ 9

*United States v. Perea-Rey*, 2012 U.S. App. LEXIS 10941 (9th Cir. 2012) ................. 14

*United States v. Sermon*, 228 F.Supp 972 (W.D.Mo. 1964)...................................... 5

*United States v. Standefer*, 2007 US Dist. LEXIS 57768 (S.D.Cal. 2007) ................... 11

*United States v. Terry*, 11 F.3d 110 (9th Cir. 1993)................................................ 5

*United States v. Valdez-Pacheco*, 237 F.3d 1077 (9th Cir. 2001)............................... 8

*United States v. Weaver*, 636 F.Supp. 2d 769, (C.D. Ill. 2009)............................... 11

*Whiteley v. Warden, Wyo. State Penitentiary*, 401 US 560 (1971) ........................... 12

*Wong Sun v. United States*, 371 US 471 (1963).................................................. 15

## STATUTES

18 USC § 2510 ..................................................................................... 8

18 USC § 2518 ................................................................................... 14

18 USC § 2703 ............................................................................... 4, 11

18 USC § 3122 ................................................................................... 14

18 USC § 3123 ................................................................................... 14

28 USC § 1651 ................................................................................ 4, 6

Federal R. Crim. P. 41................................................................................ 4, 5

Federal R. Crim. P. 57................................................................................ 4

## I.   OVERVIEW OF INVESTIGATION

Defendant Edwin Magaña-Solis (Magaña) is charged, along with numerous co-defendants, with violating 28 USC §§ 841, 843, and 846 by conspiring to distribute controlled substances using communication facilities.

During the course of its investigation, the prosecution applied for and was granted numerous court orders of three general natures: (1) cellular phone "geolocation" orders, (2) pen register trap-and-trace (including cell-site location information), and (3) phone wiretap orders.  The investigation also involved months of "pole camera" surveillance at one site and approximately one month of pole camera surveillance at another site.  The prosecution also was granted at least one automobile tracking order and various search warrants for homes and cars.

This instant motion relates to the geolocation orders and pen register orders that in turn provided a partial basis for subsequent applications and warrants.

### A.   "GEOLOCATION" ORDERS

On April 29, 2010, in USDC Oregon case number 10-MC-9096-B, the prosecution applied for and was granted an "Order Authorizing the Disclosure of Latitude and Longitude Data Relating to a Specified Wireless Telephone" (geolocation order).  On May 20, 2010, the prosecution was granted a second geolocation order.

Beginning on March 24, 2011, and running through August 25, 2011, the prosecution applied for and was granted a series of nine similar orders or extensions to previous orders.  Overall, the prosecution obtained a known total of eleven geolocation orders or extensions for the phones of four different target individuals, two of whom, Hugo and Adrian Gonzalez-Pasaye, are co-defendants in this case.

PAGE 1 – MEMORANDUM IN SUPPORT OF DEFENDANT MAGAÑA-SOLIS' MOTION TO SUPPRESS AND EXCISE EVIDENCE DERIVED FROM "GEOLOCATION" AND PEN REGISTER ORDERS
    United States v. MAGAÑA-SOLIS,
    USDC Oregon Case No. 3:CR 11-467-MO-8

### B.    PEN REGISTER/TRAP AND TRACE ORDERS

On April 29, and May 14, 2010, the prosecution also applied for and was granted two "Order[s] (1) Authorizing the Installation and Use of a Pen Register and a Trap and Trace Device; and (2) Authorizing Release of Subscriber Information and Cell Site Information" (pen register orders).  The prosecution was subsequently granted eleven additional similar orders for the phones of six different individuals over the course of the next year and a half (the final order was granted on November 2, 2011).  Two of the subjects of these pen register orders (the brothers Gonzalez) are co-defendants in this case.

### C.    WIRETAP ORDERS

On October 17, 2011, the prosecution applied for and was granted a wiretap order for a phone that was purportedly used by Hugo Gonzalez-Pasaye.  On November 18, 2011, the prosecution applied for and was granted an extension on the first wiretap order along with two additional wiretap orders, one for a second phone purportedly used by Hugo, and the other for a third phone, purportedly used by Adrian Gonzalez-Pasaye.  These three wiretaps resulted in the recording of communications purportedly made between Hugo Gonzalez-Pasaye and Defendant Magaña.  The application for the wiretap orders relied, in part, on information gained by the prior geolocation and pen register orders.

## II.    OVERVIEW OF ARGUMENT

The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

*United States v. Jones*, 132 S.Ct. 945, 949, 506 US ___, 181 L.Ed.2d 911

(2012).  The obtaining of information by government officers is a search if it is achieved

by an invasion of privacy.  *Id.* at 951, n.5.  A violation occurs when "government officers violate a person's reasonable expectation of privacy," as "the Fourth Amendment protects people, not places."  *Id.* at 950 (quoting *Katz v. United States*, 389 US 347, 351, 88 S.Ct. 507 (1967)) (internal quotation omitted).  Indeed, "the use of longer term GPS monitoring in investigations of most offenses impinges on expectations of privacy." *Jones*, 132 S.Ct. at 964 (Alito, J., concurring).  And certainly, an individual's location in a non-public place undoubtedly implicates the 4th Amendment. See *United States v. Karo*, 468 US 705, 714, 104 S.Ct. 3296 (1984).

The Prosecution in its investigation of this case, bypassed the warrant requirement and essentially constructed a framework that does not exist in federal statutes or federal rules.  The Prosecution took pieces from existing rules and statutes and created from these pieces a patchwork that suited its investigatory purposes.  This "hybrid" approach violates the basic constitutional tenet of separation of powers.  It is not for the executive branch to make law.  *See A. L. A. Schechter Poultry Corp. v. United States*, 295 US 495, 528-9, 55 S.Ct. 837 (1935).

Instead of obtaining warrants, the prosecution used their patchwork to obtain "orders" which mandated that the phone company repeatedly perform illegal searches in violation of the Fourth Amendment.

## III.    THE GEOLOCATION ORDERS WERE NOT PROPERLY AUTHORIZED

Each geolocation order is essentially an injunction.  The orders direct a cellular phone company to actively engage in a criminal investigation, not merely that it provide information already in its possession or provide access to its facilities or technical expertise.  Any time the DEA wishes, the geolocation orders required the phone company

to provide the latitude and longitude of the particular target phone "by unobtrusively initiating a signal on its network." See, e.g., *Affidavit of Walter Monk* dated April 29, 2010, USCD Oregon Case no. 10-MC-9096-B, p.3, attached as Exhibit A-2.

Each geolocation application referred to in this motion was made by the prosecution under the purported authority conferred by four statutes: Federal Rs. Crim. P. 57(b) and 41, 28 USC § 1651(a), and 18 USC § 2703(d). According to the various geolocation applications, these statutes "authoriz[e] the disclosure of latitude and longitude data [establishing the approximate positions of the target cell phones] generated at any time up to 30 days from the date of the proposed order, at such intervals and times at any time of the day or night as the government may request." See, e.g., *Application* dated April 29, 2010, USCD Oregon Case no. 10-MC-9096-B, pp. 1-2, attached as Exhibit A-1.

Simply stated, the statutes cited by the prosecution do not authorize any such continuous disclosure from or injunction upon the cellular phone companies.

## 1.    FEDERAL RULE OF CRIMINAL PROCEDURE 57(B) DOES NOT AUTHORIZE THE TYPE OF GEOLOCATION ORDERS IN QUESTION

Federal R. Crim. P. 57(b) states, in its entirety:

> *Procedure When There Is No Controlling Law.* A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district. No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local district rules unless the alleged violator was furnished with actual notice of the requirement before the noncompliance.

The intention of this rule is to provide "flexibility to the court in regulating practice." Federal R. Crim. P. 57, *Notes of Advisory Committee on Rules—1995 Amendment.* Rule 57 "allows district courts wide latitude in regulating the progress of criminal trials." *United States v. George*, 883 F.2d 1407, 1418 (9th Cir. 1989). There appears to be no

PAGE 4 – MEMORANDUM IN SUPPORT OF DEFENDANT MAGAÑA-SOLIS' MOTION TO SUPPRESS AND EXCISE EVIDENCE DERIVED FROM "GEOLOCATION" AND PEN REGISTER ORDERS
    United States v. MAGAÑA-SOLIS,
    USDC Oregon Case No. 3:CR 11-467-MO-8

support for the use of Rule 57 in the investigatory, pre-indictment stage of a criminal investigation.  The appellate history of this rule indicates that its purpose is to allow a local court to make rules or adopt usages as necessary for the procedural aspects of a criminal case.  For example, Rule 57 is intended to deal with such matters as: the local procedure of assignment of cases to trial judges (*Levine v. United States*, 182 F.2d 556 (8th Cir. 1950)); the timing requirements for the notice of an insanity defense (*United States v. Sermon*, 228 F.Supp 972 (W.D.Mo. 1964)); the conduct of voir dire (*United States v. Anderson*, 433 F.2d 856 (8th Cir. 1970)); and the like.

Further, rules promulgated under Rule 57 should be made available to the public. *United States v. Terry*, 11 F.3d 110, 113 (9th Cir. 1993).  That the text of the rule itself suggests a notice requirement (by requiring "actual notice" to a party before any sanctions are considered) indicates that the intention of Rule 57 is to make any particular rule known in advance of its use, not to grant a judge blanket authority to issue specific ad hoc orders in aid of a government investigation upon request by the government.

### 2.    FEDERAL RULE OF CRIMINAL PROCEDURE 41 DOES NOT AUTHORIZE THE TYPE OF GEOLOCATION ORDERS IN QUESTION

Federal R. Crim. P. 41 lays out the authority of the court to issue search or seizure warrants or a warrant for a tracking device and describes the procedure for the prosecution to obtain and execute any such warrant.  Rule 41 is lengthy and well known to this court, so I will not reproduce it in its entirety here.

Rule 41(a)(1) makes clear that it does not modify or override more specific statutes.  Further, the Rule specifically constrains the authority of a court to issue a warrant.  For purposes of this case, which does not involve an investigation of terrorism or,

so far as is known, an investigation involving searches outside the United States, that authority is limited to (1) a warrant for a person or property located within the district, 41(b)(1), (2) a warrant for a person or property located outside the district if that person or property was within the district at the time the warrant was issued but might move or be moved before the warrant can be executed, 41(b)(2), or (3) a warrant allowing the installation of a tracking device within the district, 41(b)(4).

The geolocation orders sought and obtained by the prosecution in this case is not in any of those three categories. Further, Rule 41 clearly sets out the result of a successful application (the "issu[ance] of the warrant to an officer authorized to execute it," 41(e)(1)) and the process by which that officer executes the warrant, 41(f).

The result obtained by the Prosecution from each of its geolocation applications was not a warrant. It was instead two orders, one of which directed the service provider to disclose the geolocation information to the Prosecution "at such intervals and times as directed by the Drug Enforcement Administration," and directing the service provider to not disclose the existence of the order itself or the service provider's provision of the phone's geolocation information. *See, e.g.* Exhibits A-3 and A-4.

In short, nothing in the text of Rule 41 authorizes geolocation orders.

### 3.    28 USC § 1651(A) DOES NOT AUTHORIZE THE TYPE OF GEOLOCATION ORDERS IN QUESTION

The prosecution also cites what is commonly referred to as the "All Writs Act" as authorization for the geolocation orders:

> (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

28 USC § 1651(a).

The All Writs Act does not simply grant a court authority to issue any sort of order or injunction requested by a party. There are constraints on the use of the All Writs Act as authority for any particular court action: there must be an absence of alternative avenues, there must be an independent basis for subject-matter jurisdiction, and there must be a finding that the writ is necessary or appropriate in aid of that jurisdiction. Lastly, the form of any particular action should conform to the usages and principles of law. "In short, the All Writs Act may authorize a search in furtherance of a prior order only where no other law applies, no Fourth Amendment right to privacy is implicated, and exceptional circumstances are present." *In re Application of United States for an Order Authorizing Disclosure of Location Information of a Specified Wireless Telephone*, No. 10-2188-SKG, ___ F.Supp.2d ___, 2011 U.S. Dist. LEXIS 85638 at *162, 2011 WL 3424470 (Md. 2011); *See also, e.g.,* Dimitri D. Portnoi, *Resorting to Extraordinary Writs: How the All Writs Act Rises to Fill The Gaps in the Rights of Enemy Combatants*, 83 NYU L. Rev. 293, 296 (2008) (overview of the All Writs Act).

### A) THERE WAS NO FINDINGS REGARDING AN ABSENCE OF STATUTORY PROCEDURES OR THE INADEQUACY OF TRADITIONAL MEANS

As described by the Supreme Court:

The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling. Although that Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate

*Penn. Bur. of Corr. v. US Marshals Srvc. et. al.*, 474 US 34, 43 (1985). The Act "fill[s] the interstices of federal judicial power when those gaps threate[n] to thwart the otherwise proper exercise of federal courts' jurisdiction." *Id.*, 474 US at 41; *cf. United States v. Valdez-Pacheco*, 237 F.3d 1077, 1079 (9th Cir. 2001) ("the common law writs survive only to the extent that they fill "gaps" in the current systems of postconviction relief.").

In *Penn. Bur. of Corr.*, the Court held that, absent an express finding of exceptional circumstances and a clear showing of the inadequacy of traditional means, the trial court did not have authority to order the US Marshals to transport a state prisoner to the federal courthouse. *Penn. Bur. of Corr.*, 474 US at 42-43.

Without a similar finding of exceptional circumstances and a clear showing of the inadequacy of traditional means, the geolocation applications' reliance on the All Writs Act as a basis for a geolocation order is misplaced.

Furthermore, there *is* a statute that appears to deal with the type of geolocation information sought by the prosecution and with the way in which the prosecution hoped to obtain that information. 18 USC § 2510(12)(C) defines "electronic communication 18 USC 3117. "Rather than being a "stored record or other information," [precise location information] falls squarely within the definition of communications from a tracking device." *In re Application*, 2011 U.S. Dist. LEXIS 85638 at *33.

### B) THERE WAS NO INDEPENDENT BASIS FOR SUBJECT-MATTER JURISDICTION

The All Writs Act does not independently provide jurisdiction to federal courts.

*Syngenta Crop Prot., Inc. v. Henson*, 537 US 28, 33 (2002).

> Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute.  The burden of establishing federal jurisdiction is on the party invoking federal jurisdiction.

*United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008) (internal quotations and citations omitted).

> It is long since settled that the courts of the United States have no common-law jurisdiction in criminal cases; that, so far as the United States are concerned, there are no common-law crimes; and that therefore its courts cannot take cognizance of any act or omission as a crime unless it has been made such by an act of congress. *U.S. v. Hudson*, 7 Cranch, 32; *U.S. v. Bevans*, 3 Wheat. 336.

*United States v. Lewis*, 36 F. 449, 450 (Or. 1888)

It is a well established general principle that territorial jurisdiction of a federal district court in criminal cases depends on some part of the criminal activity having occurred within its territory.  *United States v. Luton*, 486 F.2d 1021, 1022 (5th Cir. 1973), *cert denied*, 417 US 920, 94 S. Ct. 2626 (1974); *see also American Banana Co. v. United Fruit Co.*, 213 US 347, 356 (1909).

In its first geolocation application (in case no 10-MC-9096-B), the prosecution makes no showing that the criminal activity it alludes is taking place was taking place *in Oregon*, or even that it was taking place in the *United States*.  The application avers that "a crime has been committed," while the supporting affidavit makes the blanket assertion that the investigation "involves a conspiracy to import methamphetamine from Mexico to the United States for distribution throughout Oregon, California, Arizona and elsewhere [in violation of federal statutes]."  The affidavit points out that the subject phone is actually a California phone and that the investigation that brought the phone to the authority's attention was run from Arizona.  The affidavit merely states that DEA-Phoenix "believe[s],"

PAGE 9 – MEMORANDUM IN SUPPORT OF DEFENDANT MAGAÑA-SOLIS' MOTION TO SUPPRESS AND EXCISE EVIDENCE DERIVED FROM "GEOLOCATION" AND PEN REGISTER ORDERS
    United States v. MAGAÑA-SOLIS,
    USDC Oregon Case No. 3:CR 11-467-MO-8

based on the wiretaps and cell-site data (that was obtained at some point), that the subject phone is physically in the District of Oregon. (The reports from the DEA-Phoenix investigation were requested in discovery but have not been provided by the prosecution as of this date.) This argument overlaps with the argument regarding the lack of probable cause put forth below.

Taken another way, as discussed in other subsections of this memorandum regarding the FRCrP 57 and 41, *supra*, and 18 USC 2703(d), *infra.*, as there is no independent statutory basis supplying jurisdiction to the court for these sorts of geolocaiton applications, the All Writs Act cannot create the jurisdiction.

### C)     THERE WAS NO FINDING THAT THE WRIT IS NECESSARY OR APPROPRIATE IN AID OF THAT JURISDICTION

There was no finding of exceptional circumstances or a showing of the inadequacy of traditional means as contemplated in *Penn. Bur. of Corr., supra*, in the geolocation applications or orders. As such, the All Writs Act does not provide the avenue for the information the prosecution sought with its geolocation applications.

### D)     THE ISSUANCE OF THE GEOLOCATION ORDERS DID NOT CONFORM TO THE USAGES AND PRINCIPLES OF LAW

The prosecution's use of the All Writs act to obtain private information in manner employed in this case is antithetical to the protections provided by the Fourth Amendment, which were created to curtail the generalized power of the prosecution to search indefinitely at large.

It cannot be doubted that the Fourth Amendment's commands grew in large measure out of the colonists' experience with the writs of assistance and their memories of the general warrants formerly in use in England. These writs, which were issued on executive rather than judicial authority, granted sweeping power to customs officials and other agents of the King to search

PAGE 10 – MEMORANDUM IN SUPPORT OF DEFENDANT MAGAÑA-SOLIS' MOTION TO SUPPRESS AND EXCISE EVIDENCE DERIVED FROM "GEOLOCATION" AND PEN REGISTER ORDERS
United States v. MAGAÑA-SOLIS,
USDC Oregon Case No. 3:CR 11-467-MO-8

at large for smuggled goods. Though the authority to search granted by the writs was not limited to the home, searches conducted pursuant to them often were carried out in private residences.  See generally *Stanford v. Texas*, 379 US 476, 481-485 (1965); *Marcus v. Search Warrant*, 367 US 717, 724-729 (1961); *Frank v. Maryland*, 359 US 360 (1959).

*United States v. Chadwick*, 433 US 1, 7-8 (1977).

## 4.    18 USC 2703(D) DOES NOT AUTHORIZE THE TYPE OF GEOLOCATION ORDERS IN QUESTION

18 USC 2703(d) provides:

A court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation. In the case of a State governmental authority, such a court order shall not issue if prohibited by the law of such State. A court issuing an order pursuant to this section, on a motion made promptly by the service provider, may quash or modify such order, if the information or records requested are unusually voluminous in nature or compliance with such order otherwise would cause an undue burden on such provider.

*Id*.  2703(d), then, authorizes disclosure under subsections (b) and (c).

2703(b) relates to the wire or electronic communications in a "remote computing service."  The term "remote computing service" means "the provision to the public of computer storage or processing services by means of an electronic communications system."  18 USC § 2771; *see also United States v. Standefer*, 2007 US Dist. LEXIS 57768, 12-13 (S.D.Cal. 2007), *United States v. Weaver*, 636 F.Supp. 2d 769, 770 (C.D. Ill. 2009).  The geolocation applications do not, therefore, find any statutory support under 2703(b).

2703(c) relates to records concerning an "electronic communication service" (along with remote computing services).  "Electronic communication service" expressly does not

include "any communication from a tracking device."  18 USC § 2510(12)(C).  A

"tracking device" is "an electronic or mechanical device which permits the tracking of the

movement of a person or object."  18 USC § 3117(b).  As the prosecution posited

multiple times in affidavits attached to various geolocation applications, the cellphones the

prosecution wishes to track use:

> "a computer chip within the telephone ... to read signals from Global
> Positioning System ("GPS") navigation satellites to compute the telephone's
> approximate latitude and longitude."

*Affidavit of Walter Monk* attached to *Application* for Geolocation Order in USCD Oregon

Case no. 10-MC-9096-B, p.3, n.1, April 29, 2010, attached as Exhibit A-2.

As the cellphones are "tracking devices," and thus expressly excluded from the

purview of 18 USC 2703(c), that statute cannot support the prosecution's applications for

geolocation information.  See, e.g. *In re Application of the United States of America for an*

*Order Authorizing the Installation and Use of a Pen Register*, 402 F.Supp. 2d 597, 602

(Md. 2005).

## IV.    THE AFFIDAVITS FAILED TO ESTABLISH PROBABLE CAUSE

Regardless of the legal problems with the applications themselves, many of the

geolocation applications simply fail to establish probable cause.  Probable cause is a fluid

concept -- turning on the assessment of probabilities in particular factual contexts -- not

readily, or even usefully, reduced to a neat set of legal rules.  *Illinois v. Gates*, 462 US

213, 103 S.Ct. 2317 (1983).  However, conclusory statements do not themselves provide

an adequate basis for a probable cause determination.  *See Whiteley v. Warden, Wyo. State*

*Penitentiary*, 401 US 560, 568, 91 S.Ct. 1031 (1971).

This failing is difficult to parse out, as each successive geolocation application builds upon the ones before. As support for its contention that probable cause exists, the affidavit in support of the first geolocation application, in case no. 10-MC-9096-B, states:

(1) A DEA investigation in Phoenix, AZ, resulted in the interception of "narcotics-related" calls to the target cellphone, which "investigators" believe is physically in Oregon (*See Affidavit of Walter Monk,* p.4, para. 8, attached as Exhibit A-2);

(2) One of these supposed "narcotics-related" calls involved the Phoenix target asking the user of the target cellphone whether or not a third party was buying drugs. The answer was no, the third party was not buying drugs (*See Affidavit of Walter Monk*, p.4, para. 9, attached as Exhibit A-2);

(3) A second "narcotics-related" call involved the Phoenix target and the user of the target cellphone discussing what the affiant believed were the weights and types of drugs, and what the affiant believed was the difficulty of finding a stash house for any drugs.

These three points, purportedly providing probable cause, do nothing of the sort. At best, they cast suspicion on the parties. There is no indication in the affidavit that actual drugs were ever found in connection with the parties, or that any crime had actually happened anywhere. As such, the affidavit does not provide an adequate basis for a probable cause determination.

The subsequent affidavit in support of the geolocation application in case no. 10-MC-9112 sets out the same set of facts, bolstered now by more information gleaned from the Phoenix investigation: (1) that the user of the target cellphone had a new number (*Affidavit of Walter Monk* in USCD Oregon Case no. 10-MC-9112, p.6, para. 12, attached as exhibit B-1), (2) the user of the target cell phone knew about a seizure of a large

PAGE 13 – MEMORANDUM IN SUPPORT OF DEFENDANT MAGAÑA-SOLIS' MOTION TO SUPPRESS AND EXCISE EVIDENCE DERIVED FROM "GEOLOCATION" AND PEN REGISTER ORDERS
    United States v. MAGAÑA-SOLIS,
    USDC Oregon Case No. 3:CR 11-467-MO-8

amount of cash that purportedly belonged to the Arizona target (para. 12), and (3) the

phone was in the Salem, Oregon, area (para. 13) (based on information gained as a result

of a prior pen register order).  Again, the assertions in the supporting affidavit do not

provide an adequate basis for a probable cause determination.

## V.    THE PEN-REGISTER/TRAP AND TRACE APPLICATIONS AND ORDERS IMPROPERLY SEEK CELL SITE LOCATION INFORMATION

In its applications for pen register orders, the prosecution seeks (in part) essentially

the same location information sought in its geolocation applications, this time under a new

"hybrid": 18 USC §§ 3122 and 3123 in combination with 18 USC 2703.  This approach

also fails.

> The government may not seek cell site information pursuant to the Pen/Trap Statute, however, because the CALEA [(Communications Assistance for Law Enforcement Act (CALEA), P.L. 103-313, 108 Sta. 4279 (1994), which amended the Stored Communications Act," codified at 18 U.S.C. § 2701 et seq.)] explicitly forbids service providers from disclosing "any information that may disclose the physical location of the subscriber" when the government proceeds "solely pursuant to the authority for pen registers and trap and trace devices." 47 USC § 1002(a)(2). The government reads the CALEA as affirmatively authorizing access to information disclosing the physical location of the subscriber so long as the government does not act "solely pursuant" to the Pen/Trap Statute. Here, the government contends it proceeds not only under the Pen/Trap Statute but also under Section 2703(c) and (d) of the SCA. The problem with this is that the government cannot act pursuant to these provisions of the SCA because they do not authorize the disclosure of real time cell site information.

*In re Application*, 402 F.Supp.2d at 603.

## VI.    EXCISION AND SUPPRESSION IS THE APPROPRIATE REMEDY

Evidence that is derived directly or indirectly from an illegal search cannot

"constitute proof against the victim of the search."  *United States v. Perea-Rey*, 2012 U.S.

App. LEXIS 10941, 6 (9th Cir. 2012) (citing *Wong Sun v. United States*, 371 US 471,

484, 83 S.Ct. 407 (1963)).  For the reasons discussed above and for reasons in co-defendant motions filed in the instant case, the fruits of the illegal search described above should be excised and surpressed.

Further, 18 USC § 2518(10)(a) provides:

> Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter [18 USCS §§ 2510 et seq.], or evidence derived therefrom, on the grounds that—

> (i) the communication was unlawfully intercepted;

*Id.*  Defendant Magaña-Solis was purportedly intercepted by the wiretaps, as evidenced by the Inventory filed in case 11-MC-9248 on February 27, 2012.  As such, he is an aggrieved person.  Any geolocation information and the information derived from ("fruits" of) the use of that geolocation information should be excised from the applications for wiretap orders on Target Telephones A, B, and C (in Oregon District Court case no. 11-MC-9248), from the numerous search warrants sought and granted in this investigation (in Oregon District Court case no. 11-MC-9282), from the tracking warrant sought and granted in this investigation (in Oregon District Court case no. 11-MC-9620), and from any other applications for warrants sought and granted in this investigation.

RESPECTFULLY SUBMITTED this 25th day of June, 2012.

/s/ (intended as original in electronic filings)

_____

Benjamin T. Andersen, OSB 06256
Attorney for Defendant

PAGE 15 – MEMORANDUM IN SUPPORT OF DEFENDANT MAGAÑA-SOLIS' MOTION TO SUPPRESS AND EXCISE EVIDENCE DERIVED FROM "GEOLOCATION" AND PEN REGISTER ORDERS
United States v. MAGAÑA-SOLIS,
USDC Oregon Case No. 3:CR 11-467-MO-8