Benjamin T. Andersen, *Of Counsel*
Pacific Northwest Law, LLP
1420 World Trade Center
121 S.W. Salmon Street
Portland, Oregon 97204
t. 503.222.2510 f. 503.546.0664
btandersen@pacificnwlaw.com

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　　Plaintiff,<br>v.<br>Edwin MAGAÑA-SOLIS,<br>　　　　　　Defendant. | Case No. 3:CR 11-467-MO-8<br><br>DEFENDANT MAGAÑA-SOLIS' MOTION TO SUPPRESS FRUITS OF STOP OF DEFENDANT AND JOINDER IN THE SIMILAR MOTION OF CO-DEFENDANT GUTIERREZ-MONTES |

Defendant moves this court to suppress the fruits of the stop and subsequent investigation of the defendant on November 18, 2011, including all evidence derived from that stop and investigation, on the grounds that the stop and subsequent investigation violated the Fourth Amendment of the United States Constitution. Defendant also incorporates arguments made by co-Defendant Gutierrez-Montes in a similar motion previously filed with this court, so far as they apply to Defendant Magaña.

Defendant requests an evidentiary hearing.

## I.　OVERVIEW

On November 18, 2011, Oregon State Police Troopers Greg Constanzo and Jake Ledbetter stopped defendant Magaña-Solis and co-defendant Gregorio Gutierrez-Montes as

they drove northbound on I-5 in separate cars. In their reports on the stops, both Troopers Constanzo and Ledbetter treat them as routine moving violation stops. Trooper Ledbetter indicates in his report that a Sergeant Dave Beck (presumably Oregon State Police's drug dog program team coordinator) told him to "be on the look out for a red 2004 Toyota Solara," as it "may be carrying contraband within the vehicle." Trooper Ledbetter then stopped the Solara, driven by co-defendant Gutierrez-Montes, allegedly because Mr. Gutierrez was talking on his cell phone while he was driving.

Trooper Costanzo subsequently stopped a second car driven by defendant Magaña, allegedly for driving two car lengths behind the red Solara while the cars were driving at 70 mph.

Trooper Constanzo, at some point, questioned Defendant Magaña, then detained him for approximately three hours

## II.   LAW ENFORCEMENT UNCONSTITUTIONALLY EXPANDED THE SCOPE OF THE STOP

The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest. *United States v. Brignoni-Ponce*, 422 US 873, 876 (1975). The stop and inquiry must be "reasonably related in scope to the justification for their initiation." *Berkemer v. McCarty*, 468 US 420, 439 (1984) (quoting *Terry* v. *Ohio*, 392 US 1, 29 (1968)). "And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released." *Berkemer*, *supra* (internal citations omitted). To ensure that the resulting seizure is constitutionally reasonable, a *Terry* stop must be limited. The officer's action must be "'justified at its inception, and . . . reasonably related in scope to the circumstances

which justified the interference in the first place.'" United States v. Sharpe, 470 US 675, 682, 105 S.Ct. 1568 (1985) (quoting *Terry*, *supra*, at 20). For example, the seizure cannot continue for an excessive period of time, see *United States v. Place*, 462 US 696, 709, 103 S.Ct. 2637 (1983), or resemble a traditional arrest, see *Dunaway v. New York*, 442 US 200, 99 S.Ct. 2248 (1979).  *Hiibel v. Sixth Judicial Dist. Court*, 542 US 177, 185-186, 124 S.Ct. 2451 (2004).  The burden is on the government to establish that any consent was freely given.  *Florida v. Royer*, 460 US 491, 497, 103 S.Ct. 1319 (1983).

Trooper Constanzo purportedly stopped Defendant Magaña for traveling two car lengths behind the car in front.  Defendant challenges that assertion.  Regardless of the initial legality of the stop, Trooper Costanzo is required to confine the scope of any inquiry so that it is "reasonably related" to the reason for the stop in the first place.  If the initial stop was lawful, Trooper Constanzo was limited to issuing a citation to Defendant Magaña for the purported violation and either impounding the car or allowing Magaña to leave. Instead, Trooper Costanzo expanded the scope of the initial stop, requested and purportedly obtained permission to search the car (challenged here by defendant), applied drug dog Cookie to the car, detained Defendant in the back of Trooper Ledbetter's patrol vehicle for an unknown but apparently extensive period of time, searched the car (which resulted in no contraband), impounded the car (as Defendant did not have an Operator's License), and eventually released Defendant from the scene.

This expansion was based on Trooper Costanzo's observations that there was no "visible clothing inside the passenger compartment," and Trooper Constanzo's opinions that drug smugglers often travel "with little or no clothing," and that Modesto, the city Defendant Magaña purportedly told Trooper Costanzo he was coming from, is a "major

PAGE 3 – DEFENDANT MAGAÑA-SOLIS' MOTION TO SUPPRESS FRUITS OF STOP OF DEFENDANT AND JOINDER IN THE SIMILAR MOTION OF CO-DEFENDANT GUTIERREZ-MONTES
    United States v. MAGAÑA-SOLIS,
    USDC Oregon Case No. 3:CR 11-467-MO-8

source city for methamphetamine distribution." These observations do not establish probable cause to arrest and they do not support the expansion of the stop.

### III. THE STOP SHOULD BE SUPPRESSED

The stop and the resulting investigation should be suppressed for the reasons stated above. *See, generally*, *Hudson v. Michigan*, 547 US 586, 590-592, 126 S.Ct. 2159 (2006) (overview of exclusionary rule).

SO MOVED this 26th day of June, 2012.

/s/ (intended as original in electronic filings)
_____
Benjamin T. Andersen, OSB 06256
Attorney for Defendant

PAGE 4 – DEFENDANT MAGAÑA-SOLIS' MOTION TO SUPPRESS FRUITS OF STOP OF DEFENDANT AND JOINDER IN THE SIMILAR MOTION OF CO-DEFENDANT GUTIERREZ-MONTES
    United States v. MAGAÑA-SOLIS,
    USDC Oregon Case No. 3:CR 11-467-MO-8